STATE, Appellant, v. MANLEY, Respondent.

(150 N. W. 291.)

1. **Food—Oleomargarine—Yellow Substitute For Butter—Artificial Coloring—Statute—Construction—Conflict.**

   Laws 1909, Ch. 296, Sec. 9, prohibiting the manufacture, sale, etc., of any "substitute for butter * * * having a yellow color," and Laws 1909, Ch. 163, Sec. 15, making unlawful the sale, etc., of oleomargarine containing coloring matter, are in pari materia, and should be construed as parts of one act, there being no inherent conflict between the two enactments; and said Section 9 is a general section, broader in terms than Section 15, and includes all yellow substitutes for butter, including oleomargarine, whether artificially colored or not.

2. **Criminal Law—Evidence—Color of Oleomargarine—Judicial Notice.**

   The court cannot take judicial notice of the natural color of all oleomargarine.

3. **Constitutional Law—Cognizance of Question—Sale of Oleomargarine—Absence of Evidence of Color—Judicial Notice.**

   The constitutionality of Laws 1909, Ch. 296, Sec. 9, prohibiting sale of any substitute for butter having a yellow color, and construed to prohibit sale of yellow oleomargarine, is not raised in absence of proof that yellow is the natural color of oleomargarine; and the court will not, for the purpose of deciding question of constitutionality, take judicial notice of such natural color.

   (Opinion filed December 31, 1914. Rehearing pending.)

Appeal from Municipal Court of Sioux Falls. Hon. ALPHA F. ORR, Judge.

Joseph Manley, the defendant, was charged by information with keeping, selling, using, and serving as food oleomargarine. From an order sustaining a demurrer to the information, the State appeals. Reversed, and remanded for further proceedings.

*Royal C. Johnson,* Attorney General, and *Martin Bergh,* State's Attorney, for Appellant.

*Bailey & Voorhees, A. R. Urion,* and *W. C. Kirk,* for Respondent.

(1) Under point one of the opinion, Appellant submitted that: Sec. 15, Ch. 163, Laws 1909, is not applicable.

Respondent submitted that: Sec. 15, Ch. 163, Laws 1909, is a statute specifically applicable to oleomargarine, and is not modified by Sec. 9, Ch. 296, Laws 1909. Section 15 is conclusive on point of coloring, and should control.

These statutes are in pari materia, 11 Encyc. of U. S. Supreme Court Reports, 122; Bernier v. Bernier, 147 U. S. 242.

The oleomargarine, in order to be within the prohibition of Sec. 9, Ch. 296, Laws 1909, must be colored in immitation of yellow butter; Plumley v. Massachusetts, 155 U. S. 461; Bennett v. Carr, 134 Mich. 243, 96 N. W. 26; State of Minnesota v. Hammond Packing Company, 105 Minn. 359, 117 N. W. 606; People v. Guiton, 210 New York 1, 103 N. E. 773.

(2) Under point two of the opinion, Respondent cited: Schollenberger v. Pennsylvania, 171 U. S. 1; The Century Dictionary; State of Minnesota v. Hammond Packing Company, 105 Minn. 359, 117 N. W. 606; Bennett v. Carr, 134 Mich. 243, 246, 96 N. W. 26; State of Minnesota v. Hanson, 118 Minn. 85, 136 N. W. 412.

McCOY, J.  In this case the state's attorney of Minnehaha county filed a complaint in the nature of an information, in the municipal court, charging the defendant with having kept, sold, used, and served as food a certain substitute for butter having a yellow color—to-wit olemargarine—contrary to the provisions of section 9, c. 296, Laws of 1909. To this complaint the defendant demurred on the ground that such complaint did not describe a public offense. The demurrer being sustained, the state appeals.

[1] Section 9, c. 296, Laws of 1909, in so far as it relates to the questions involved in this case, is as follows:

No substitute for butter and cheese, having a yellow color, shall be manufactured, kept in possession, offered for sale, sold, shipped, consigned or forwarded by common carrier, publice or private."

One contention of respondent is that section 15, c. 163, Laws of 1909, permits the sale of oleomargarine not artifically colored, and that there is no allegation in the complaint that the oleomar-

garine kept, sold, and used by respondent was artifically colored. As we view the two enactments, there is no inherent conflict between these two sections. Section 9 of chapter 296 does not permit the sale or use of oleomargarine that is yellow. These two sections are in pari material, and might have been, and should be, construed as parts of one act, one section of which provides that substitutes for butter (which would include oleomargarine) having a yellow color shall not be sold or served; and the other provided that oleomargarine containing certain artificial coloring matter shal not be sold or served. Section 9 is a general section, a little broader in its terms than section 15, and would include all yellow substitutes for butter, whether artifically colored or not.

[2, 3] If we could take judicial notice of the fact that all normal and natural oleomargarine has a yellow color by virtue of its essential ingredients, then we would have the constitutional question before us of determining whether or not the state, in the exercise of its police power, could, in this manner, effectually prohibit the sale and use of oleomargarine. The question of the constitutionality of a statute prohibiting the sale and use of such article we do not deem to be properly before us in this case, for the reason that we are of the view that we cannot take judicial notice of the fact that oleomargarine, in its natural and normal state, is of a yellow color. It is contended that from numerous and various judicial opinions upon the subject of the color of oleomargarine, and from a scientific knowledge of its essential ingredients we should take judicial notice of the natual color of oleomargarine, and that in its natural state it is of a yellow color. Our observation is that most of the judicial decisions bearing upon the subject were based upon the testimony, as to color, natural or otherwise, appearing in the record of each particular case. We also observe that in the case of McCray v. United States, 195 U. S. 27, 24 Sup. Ct. 769, 49 L. Ed. 778, 1 Ann. Cas. 561, the oleomargarine defendant who was resisting a federal tax upon artifically colored oleomargarine under the Pure Food Laws made the contention that oleomargarine was naturally white. From the reading of judicial decisions and the contentions therein made by the oleomargarine people, we conclude that for some purposes olemorgarine is "naturally white"; but for some other purposes it is, in its natural and normal state, yellow. McCray v.

United States, supra; State v. Hanson, 118 Minn. 85, 136 N. W. 412, 40 L. R. A. (N. S.) 865, Ann. Cas. 1913E, 405. Hence we are unable to subscribe to the doctrine that the courts will take judicial notice of the natural color of all oleomargarine. If the natural color is white, then there could be no objection urged against the constitutionality of the statute in question, as neither act prohibits the sale or use of the naturally white article. If the proof on the trial of the case should develop that the natural color is yellow, then the question of the constitutionality of the statute would have to be considered.

We are of the opinion that the demurrer should have been overruled.

The order appealed from is reversed, and the cause remanded for further procedure.